813 So.2d 186 (2002)
SEMINOLE ENTERTAINMENT, INC., etc., Petitioner,
v.
CITY OF CASSELBERRY, FLORIDA, Respondent.
No. 5D01-2312.
District Court of Appeal of Florida, Fifth District.
March 22, 2002.
*187 Steven G. Mason of Law Offices of Steven G. Mason, Orlando, for Petitioner.
Usher L. Brown, Anthony A. Garganese, and Jeffrey S. Weiss of Brown, Ward, Salzman & Weiss, P.A., Orlando, for Respondent.
PER CURIAM.
Seminole Entertainment, Inc. d/b/a Rachel's ("Rachel's"), petitions this court to *188 issue a writ of certiorari directed to the circuit court's decision upholding the revocation of the Rachel's adult entertainment license. Applying the narrow scope of review required in this second tier certiorari proceeding, we deny the petition.
Casselberry served Rachel's with a notice of intent to revoke its adult entertainment license on the basis that Rachel's was permitting the sale and use of controlled substances, as well as prostitution and other prohibited sexual activities, to take place on its premises. Pursuant to Casselberry's adult entertainment code, an evidentiary hearing was held before the city commission which resulted in the revocation of Rachel's license.
Rachel's timely filed a petition for writ of certiorari in the circuit court alleging six claims of error. The circuit court denied the petition and affirmed the city commission's decision. In an extensive opinion, the circuit court addressed and rejected all of Rachel's claims. Rachel's thereafter timely petitioned this court for certiorari review of that decision.
In this second tier certiorari appeal, the scope of review is extremely narrow. As articulated by the Supreme Court in Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995):
[C]ertiorari in circuit court to review local administrative action under Florida Rule of Appellate Procedure 9.030(c)(3) is not truly discretionary common-law certiorari, because the review is of right..... In other words, in such review the circuit court functions as an appellate court, and, among other things, is not entitled to reweigh the evidence or substitute its judgment for that of the agency.
As the case travels up the judicial ladder, review should consistently become narrower, not broader. We have held that circuit court review of an administrative agency decision, under Florida Rule of Appellate Procedure 9.030(c)(3), is governed by a three-part standard of review: (1) whether procedural due process is accorded; (2) whether the essential requirements of law have been observed; and (3) whether the administrative findings and judgment are supported by competent substantial evidence. The standard of review for certiorari in the district court effectively eliminates the substantial competent evidence component. The inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law.

Id. at 530 (citations omitted)(emphasis added).
As to whether the circuit court afforded Rachel's procedural due process, in its petition for certiorari Rachel's does not even contend to the contrary. Rather, in asserting a due process argument, Rachel's improperly argues that it was not afforded procedural due process in the hearing before the city commission. Arguments as to the alleged lack of due process before the city commission were properly presented to the circuit court but are beyond the scope of the due process review available here.[1]
*189 As to whether the circuit court applied the correct law, the certiorari petition filed by Rachel's once again primarily and improperly focuses on alleged legal errors committed during the city commission proceedings, not the application of incorrect law by the circuit court during the certiorari proceedings. Such arguments are not properly before us for review. The only arguments directed toward the circuit court's alleged application of incorrect law were as follows:
(1) The circuit court failed to apply the correct law in upholding the license revocation on the grounds that the notice of revocation was legally sufficient;
(2) The circuit court failed to apply the correct legal standard in determining whether the evidence supported revocation; and
(3) The circuit court applied the incorrect law in finding that the prompt judicial review constitutionally mandated in prior restraint cases simply means prompt judicial access, not a prompt judicial decision.
However, in support of each of these arguments, Rachel's simply contends that the circuit court came to an incorrect legal conclusion based on the facts before it. As such, its arguments do not support a reversal in this second tier certiorari proceeding.
The remaining arguments raised by Rachel's relate to whether there was error in the conduct of the hearing by the city commission or evidentiary rulings made during that hearing. These issues were for determination by the circuit court in its first tier certiorari review and do not support a granting of second tier certiorari by this court. For example, as to the cross-examination rulings referenced in Rachel's I, Rachel's contends that the rulings denied it due process, whereas Casselberry argued that objections were properly sustained on the basis that the questions asked went beyond the scope of direct examination. A review of the cross examination at issue (attached hereto as an appendix) does not support a conclusion that the circuit court applied the incorrect law in denying the petition for certiorari on that issue. In addition, in applying the correct law, the circuit court could reasonably have found that disallowing a response to the question objected to was harmless error, since the question was related to whether the owners of the licensee had knowledge of the illegal conduct occurring on the premises and the circuit court found that the term "licensee" was broadly defined in the city ordinances so as not to require knowledge by the owners of the licensee.
We deny Rachel's petition for writ of certiorari. By the terms of this court's *190 order in Rachel's I, the injunction entered pursuant thereto automatically expires upon issuance of this opinion.
GRIFFIN and PALMER, J.J., concur.
COBB, J., dissents with opinion.

APPENDIX
CROSS EXAMINATION OF MR. LANEY
BY COUNSEL FOR RACHEL'S:
Q: During the course of your investigation, which, as I understand it, was pretty much full-time for six months
A: That's correct.
Q: -how much arrests were made for prostitution?
A: I don't have an exact number. If you'd like, I can count up what I've got here.
Q: Please. Please. And I take it, it would take a long time to do that?
A: I would say within a minute or two.
Q: Go for it.
A: There was a total of six
Q: Six?
A: entertainers from the Casselberry location that were charged with prostitution, two of which, which were also charged with RICO, organized crime.
Q: And what evidence do you have that any of the five individuals whom I named, who were on the board of directors of Seminole Entertainment, had knowledge of the activities of these six individuals?
A: That's going to be part of an ongoing investigation, and I'm not going to answer that at this time.
MS. McINTOSH: Mr. Sheppard, did you say, the five individuals that I named?
COUNSEL FOR RACHEL'S: I thought that's what I said.
MS. McINTOSH: I only had four individuals down.
COUNSEL FOR RACHEL'S: I stand corrected. Thank you.
MS. McINTOSH: I just wanted to make sure we didn't miss one.
COUNSEL FOR THE CITY: For the record, my objection is that the testimony is the subject of a pending investigation.
COUNSEL FOR RACHEL'S: Well, I move for a continuance until it's completed so that we can have due process and the right to confront our witness.
COUNSEL FOR THE CITY: My response to that is, Mr. Mayor, is as far as the pending investigation or unrelated charges based upon statewide investigations and other criminal charges that have nothing to do with this civil revocation hearing, there's and that the evidence before this commission, we will stand on the evidence as presented before this commission. Should counsel, in his closing argument, deem that that evidence is insufficient, certainly he can argue that, such as he already has with the state evidence. But there's no necessity for a continuance. We'll stand on the evidence that we present in these days of testimony.
COUNSEL FOR RACHEL'S: My position is that once an individual has a license granted by a governmental entity, that the Constitution of the United States, specifically the due process clause of the 14th Amendment, as well as Article 1, Section 9 of the Florida Constitution, affords a licensee due process of law.

*191 And I believe in fundamental fairness and fundamental principles of due process would afford the licensee the opportunity to cross-examine and to pursue his theory of defense. But if I am confronted with "Oh, it's a matter of an ongoing investigation," I'm blocked from the very rudiment of due process, period.
And so respectfully, I'd ask that you direct the witness to answer my question, most respectfully, Mr. Mayor.
MAYOR PRONOVOST: Madam Attorney.
MS. McINTOSH: Mr. Mayor, the Cross-examination can't exceed the scope of the Direct Examination, and there was nothing direct about inquiry into ongoing. The evidence that you heard is the evidence that the city manager's moving forward with. That's the scope of inquiry.
MAYOR PRONOVOST: The objection is sustained.
COUNSEL FOR RACHEL'S: I want to object to gettin' double-teamed here. Counsel for the city manager makes an objection and counsel for the board is arguing, and I never have an opportunity to respond. And that is denial of due process in and of itself.
MAYOR PRONOVOST: Thank you, Madam Attorney.
MS. McINTOSH: Im here
COUNSEL FOR RACHEL'S: I can't hear.
MS. McINTOSH: I'm here to function as legal counsel for the city commission, so all I'm doing is providing you with legal advice as to the objections that you're hearing.
MAYOR PRONOVOST: Thank you.
COUNSEL FOR RACHEL'S: I would also submit that there is no exception in the civil proceeding for, quote, an ongoing investigation, unquote.
COUNSEL FOR THE CITY: Mr. Mayor, I'll withdraw the formal objection based upon the ongoing nature of the investigation, and basically object because of the fact that the testimony or the question exceeds the scope of Direct, which actually is provided directly in the code. And although these are lax rules of procedure, the code requires for Cross Examination to follow that rule.
MAYOR PRONOVOST: Mr. Sheppard.
COUNSEL FOR RACHEL'S: The theory of the City here, as I understand it is, that the licensee or any person on its or his behalf, or any person listed on the application. If they allow possession or sale of a controlled substance, if they allow prostitution, if they allow any specified sexual activity, then the license is subject to revocation. Now, counsel stood up here and got the second shot at an opening statement, and that's exactly what he told you he's going to prove.
Now, the method by which he's attempting to prove it is, that these lowlevel people, quote, are acting as management, end quote. Well, they got to get their power from somewhere and it ain't coming from the dancers. It's got to come from above. So the purpose of my inquiry is, who gave Mr. Otero any authority to do anything? Who gave any of these individuals by whom the witness is characterizing as a quote, management, end quote, the power to quote, manage? I'm sure the chief of police gave this sergeant his power. Did anybody above these rogue managers give them the power to act on their behalf? And that's my purpose of inquiry, is that we have in evidence, Exhibit 1. *192 Exhibit 1 has fivefour names on it. I got that right. Got four names on it. He's neverhe can't give you any evidence about them. And what I'm asking is, does he have any evidence? And he says, "I can't tell you." Well, how in the world is anybody going to carry their burden here if he isn't able to answer those questions?
COUNSEL FOR THE CITY: Mr. Mayor, in response, counsel has asked this witness whether or not this witness had any direct knowledge as of the four individuals whether they knew or participated in the different categories of the testimony that Sergeant Laney has testified to. He's already established that fact, the fact that this witness has admitted and said that he, himselfas far as the testimony that's before this commissiondid not see or his testimony is what it is with regard to the limitations with regard to these four individuals.
As counsel has said, that is not, by any means, all that the city manager is relying upon for submitting this case of revocation to you. That is, counsel has, in my opinion and the city manager's opinion, mischaracterized these individuals for purposes of the record as, quote, low-level, end quote, employees, and quote, rogue, end quote, employees. The evidence is what it is. Mr. Otero with his testimony is who he is. Whatever you decide as fact-finders is who is he. So is Mr. Rexroad. So are the dancers that were named.
I am comfortable to submit the record to you with its limitations. The questions exceeded the scope of Direct, and there's no necessity for going any further. Counsel's already established the facts that he wanted to establish.
MAYOR PRONOVOST: Mr. Sheppard.
COUNSEL FOR RACHEL'S: I have nothing further to submit.
MAYOR PRONOVOST: Okay. Objection is sustained. Please continue.
COUNSEL FOR RACHEL'S: Thank you.
BY COUNSEL FOR RACHEL'S:
Q. Do you have any evidence that either of the four individuals that I named that are in Exhibit 1-you have Exhibit 1 there before you, correct
A. Yes, sir.
Q: those four individuals, do you have any evidence to indicate that they knew of any of the drug transactions about which you've testified?
A: Once again, it's part of an ongoing investigation and I'm not going to answer that.
COUNSEL FOR RACHEL'S: Same argument, I suppose.
MS. McINTOSH: I have a question of the witness. You're saying that, as you stand here today, you are not prepared to provide this commission with any evidence relating to that question; is that true?
THE WITNESS: Yes, ma'am; that's correct.
MS. McINTOSH: So his answer is, none.
COUNSEL FOR RACHEL'S: That isn't what he answered. Is your answer, none?
MS. McINTOSH: He's not giving you any, and that's the answer.
COUNSEL FOR RACHEL'S: Well, but that isn't the answer to my question is, none. I'll accept that if that's the answer. If somebody wants to *193 stipulate to me that there is no evidence that either of these four individuals knew of any drug transactions, I'll go on. But that isn't what he said. He said, "I'm not telling you," is what he said. And I'd say to you-and I respect the ongoing investigation privilege. It just doesn't simply apply here, is what my position is. But he's not telling me, no, he doesn't know of any.
MS. McINTOSH: No. But what he's saying is that, he's not going to testify as to if there's any evidence.
COUNSEL FOR RACHEL'S: And I'm asking you to compel him to, Mr. Mayor. In the-in the spirit of due process and fundamental fairness, I have the right to ask him those questions and I have a right to receive the answers.
MS. McINTOSH: Mr. Mayor, as a matter of law, I would advise you that the question exceeds the scope of Direct Examination. There was no Direct regarding any ongoing investigation or inquiry into what other-the folks listed in Exhibit 1 did. He's testified as to what he saw at Rachel's.
MAYOR PRONOVOST: Objection overruled.
COUNSEL FOR RACHEL'S: Yes, sir.
COBB, J., dissenting.
A quasi-judicial proceeding contemplates a certain level of basic fairness in order to comply with the requirements of due process. See Hadley v. Department of Administration, 411 So.2d 184 (Fla.1982). As I read the transcript of the proceeding before the city commission in this case, that basic fairness was denied. For example, the city attorney flatly advised the mayor, as the presiding officer at the hearing, that the city's principal witness was not going to subject himself to cross-examination on a crucial issue, thereby depriving Rachel's of even a proffer of evidence on that issue. And the mayor agreed. Despite the stringent standard of review for a second tier of certiorari review, I would hold that the circuit court failed to apply the correct law in its consideration of this issue. Rachel's is entitled to a new hearing, one which comports with elementary notions of due process.[1]
NOTES
[1] Rachel's also sought a determination of whether the city commission had failed to afford it due process by initiating a separate action in the circuit court seeking declaratory and injunctive relief against the city's enforcement of the license revocation. Seminole Entertainment v. City of Casselberry, 811 So.2d 693, (Fla. 5th DCA 2001)("Rachel's I"). Since no party to that proceeding raised the impropriety of seeking injunctive relief by filing a separate action, rather than seeking review or a stay in the original proceedings, this court did not dismiss Rachel's I on procedural grounds. Had Casselberry raised such an objection, Rachel's I would have been dismissible on procedural grounds, since Rachel's had no right to initiate an independent action to enjoin the license revocation in light of Rachel's adequate remedy at law to review the propriety of the city commission's action through certiorari in the original proceeding. Although Rachel's had the right to seek an injunction against the enforcement of the city's adult entertainment ordinances, it had no right to seek to enjoin the license revocation decision. See City of Melbourne v. Hess Realty Corp., 575 So.2d 774 (Fla. 5th DCA 1991). All Rachel's had a right to receive was certiorari review of the city commission's decision. If it wished to suspend the effect of that decision, it had the right to seek a stay pending review in this case. Rachel's never had a right to obtain from the circuit court an injunction preventing the city commission from proceeding with the license revocation based upon events at the hearing. In any event, the Rachel's I panel, by limiting the duration of the temporary injunction to the time necessary for issuance of a decision by this merits panel, in essence deemed the injunction action as a motion for stay associated with this certiorari proceeding.
[1] The harmless error analysis has no application to this matter since it cannot be determined (1) what the witness' answer would have been, (2) what avenues of inquiry would have developed had an answer favorable to Rachel's been given, and (3) what effect all this would have had on the tribunal's consideration as to: (a) whether a violation of the licensing laws was established and (b) if so, whether a penalty short of revocation might have been appropriate. See Austing v. State, 804 So.2d 603 (Fla. 5th DCA 2002).