856 So.2d 1035 (2003)
FLORIDA WATER SERVICES CORPORATION, Appellant,
v.
Hannah M. "Nancy" ROBINSON, etc., et al., Appellees.
No. 5D02-2071.
District Court of Appeal of Florida, Fifth District.
August 8, 2003.
Rehearing Denied October 14, 2003.
*1036 Joseph M. Mason, Jr., of McGee & Mason, P.A., Brooksville, for Appellant.
Garth C. Coller, County Attorney, and Kurt E. Hitzemann, Senior Assistant County Attorney, Brooksville, for Appellees, Hannah M. "Nancy" Robinson, et al.
William S. Bilenky, General Counsel, and Margaret Lytle, Assistant General Counsel, Brooksville, for Intervenor/Appellee Southwest Florida Water Management District, etc.
SHARP, W., J.
Florida Water Services Corporation appeals from a final judgment which denied its petition for a writ of prohibition and dismissed its complaint against the Board of Commissioners of Hernando County.[1] Florida Water had petitioned the circuit court to issue a writ of prohibition directing the Board to recuse itself from further consideration of Florida Waters' applications for permits to drill new wells. We conclude Florida Water has failed to demonstrate entitlement to the relief it seeks and accordingly affirm.
Florida Water is a public utility which operates waste water treatment and water supply utility systems in various counties throughout Florida, including Hernando County. Florida Water serves about 7,000 waste-water treatment customers and 28,000 water supply customers in its Hernando County service area. The Board owns and operates waste water treatment and water supply systems in areas of Hernando County not served by Florida Water.
Florida Water and the Board apparently have had a contentious relationship for several years. At one time, Florida Water Services had been regulated by the Florida Public Service Commission. After utility customers in Hernando County complained they were being forced to subsidize Florida Water's less profitable systems, the Board assumed regulatory authority.
*1037 In 2001, Florida Water entered into negotiations with the Florida Governmental Utility Authority to sell all its systems to the Authority. The Authority in turn planned to sell the systems to the county in which each system is located.
At Board meetings on February 6, 2002 and March 6, 2002, the Board voted to deny Florida Water's applications to sink three new wells. On March 14, 2002, Florida Water filed a motion for rehearing and recusal and demand for an administrative hearing. Florida Water alleged Hernando County was no longer interested in purchasing Florida Water's assets from the Authority and instead intended to acquire those systems through eminent domain. Florida Water claimed the Board had an interest in depressing the value of its assets by denying permits for new wells.
At the Board's April 2, 2002 meeting, Florida Water requested the entire Board recuse itself from considering Florida Water's well applications. Florida Water conceded individual commissioners may not have a personal financial conflict but argued the Board's interest in condemning Florida Water's assets created an "institutional" conflict. Florida Water proposed that Commissioners be appointed by the Governor on an ad litem basis to review its well applications or the matter be referred for an administrative hearing.
After the Board denied Florida Water's request, Florida Water petitioned the circuit court for a writ prohibiting the Board from entering any further orders on its applications and directing the Board to recuse itself. The circuit court denied Florida Water's request for a writ of prohibition.
The writ of prohibition is an extraordinary writ extremely narrow in scope and operation by which a superior court, having appellate and supervisory jurisdiction over an inferior court or tribunal, may prevent that court or tribunal from exceeding its jurisdiction or usurping jurisdiction over matters not within its jurisdiction. It will be invoked only in emergency cases to forestall an impending injury where no other appropriate and adequate legal remedy exists and only when damage is likely to follow.
Prohibition therefore may generally be granted only when it is shown the lower tribunal is without jurisdiction or is attempting to act in excess of its jurisdiction. It will not lie to prevent the mere erroneous exercise of jurisdiction by an inferior tribunal. T.D.B. v. Kirk, 468 So.2d 234 (Fla. 5th DCA 1984); Lawrence v. Orange County, 404 So.2d 421 (Fla. 5th DCA 1981); School Board of Marion County v. Angel, 404 So.2d 359 (Fla. 5th DCA 1981).
On appeal, Florida Water argues Florida's Administrative Procedure Act (APA) mandates recusal of the Board and thus it was entitled to a writ prohibiting the Board from taking any further action on its well applications. The APA provides for the disqualification of an "agency" head for bias, prejudice or interest. § 120.665, Fla. Stat.[2] The definition of *1038 "agency" includes counties and municipalities but only to the extent they are expressly made subject to the APA by general or special law or existing judicial decisions. § 120.52(1)(c), Fla. Stat.
Historically, the APA has never applied to the actions of county commissions. Hill v. Monroe County, 581 So.2d 225 (Fla. 3d DCA 1991) (chapter 120 does not apply to the regulations enacted by a county commission unless the county is expressly made subject to the chapter by general or special law); Board of County Commissioners of Hillsborough County v. Casa Development, Ltd., 332 So.2d 651 (Fla. 2d DCA 1976) (board of county commissioners is not an agency covered by the APA); Sweetwater Utility Corp. v. Hillsborough County, 314 So.2d 194 (Fla. 2d DCA 1975) (board of county commissioners is not an agency subject to judicial review under APA). Nor do we find anything in the revisions of the definition of "agency" to indicate the Legislature has changed the scope of the APA's applications to counties. See Ch. 96-159, § 3; Ch. 99-245, § 64; Ch. 99-379, § 2, Laws of Fla.
Even if not subject to the APA, Florida Water argues the Board must disqualify itself from further participation in these proceedings under common law principles regarding recusal of judges. Florida Water concedes neither section 38.10[3] nor rule 2.160[4], which govern disqualification *1039 of trial judges, strictly applies to these quasi-judicial proceedingstheir ambit being judicial proceedings. Nonetheless, Florida Water argues these principles should apply when the Board exercises quasi-judicial authority.
In Board of County Commissioners of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993), the Florida Supreme Court explained the character of the hearing determines whether the action of a county commission board is legislative or quasi-judicial. Generally speaking, legislative action results in the formulation of a general rule of policy whereas judicial action results in the application of a general rule of policy. In the context of rezoning, comprehensive rezonings which affect a large portion of the public are legislative determinations. However, rezonings which impact a limited number of persons and in which the decision is contingent upon evidence presented at a hearing are quasi-judicial proceedings. Martin County v. Yusem, 690 So.2d 1288 (Fla.1997); Snyder.
This distinction is important for, among other reasons, the method of review. A board's legislative action is subject to attack in circuit court. But in deference to the policymaking function of a board when acting in a legislative capacity, its actions will be sustained as long as they are fairly debatable. Snyder. On the other hand, rulings of a board acting in its quasi-judicial capacity are subject to review by certiorari and will be upheld only if they are supported by substantial competent evidence. Synder.
A participant in a quasi-judicial proceeding is clearly entitled to some measure of due process. See Cherry Communications, Inc. v. Deason, 652 So.2d 803 (Fla.1995) (while administrative proceedings need not match the judicial model, an impartial decision maker is a basic component of minimum due process); Charlotte County v. IMC-Phosphates Co., 824 So.2d 298 (Fla. 1st DCA 2002) (an impartial decision maker is a basic component of minimum due process in an administrative proceeding). The issue of what process is due depends on the function of the proceeding as well as the nature of the interests affected. Woodard v. State, 351 So.2d 1096 *1040 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 135 (Fla.1978).
Florida Water's remedy for redress of its claim the Board is biased and motivated by self-interest is to seek certiorari review of the Board's decision and present its due process claims to the circuit court at that time. In a somewhat similar context, we held a business whose license had been revoked by a city commission was required to present its due process claim to the circuit court through certiorari review of the revocation decision. See Seminole Entertainment, Inc. v. City of Casselberry, 811 So.2d 693 (Fla. 5th DCA 2001) (Rachel's I); Seminole Entertainment, Inc. v. City of Casselberry, 813 So.2d 186 (Fla. 5th DCA), rev. denied, 835 So.2d 269 (Fla.2002), cert. denied, ___ U.S. ___, 123 S.Ct. 2276, 156 L.Ed.2d 130 (2003) (Rachel's II).
In those cases, the City of Casselberry served Rachel's, an adult entertainment establishment operated by Seminole Entertainment, with a notice of intent to revoke its license because the company was permitting illegal activities on its premises. After a hearing date was set, Rachel's moved to disqualify the city commission for bias. The motion to disqualify was denied and the city revoked Rachel's license.
Rachel's then filed two separate actions (which we will refer to as Rachel's I and Rachel's II) relating to its license revocation. In Rachel's I, Rachel's filed a complaint in circuit court seeking a temporary and permanent injunction and declaratory relief. The request for a temporary injunction was denied and Rachel's appealed.
On appeal, Rachel's argued it had been denied due process at the license revocation hearing, a quasi-judicial proceeding. According to Rachel's, the mayor of Casselberry, who presided over the hearing and ruled on legal objections to evidence, had run for office on a platform against Rachel's. Rachel's also alleged the city manager consulted with commission members about illegal activities at Rachel's and one commissioner had participated in an undercover investigation of Rachel's by the Casselberry police.
This court concluded Rachel's established more than mere political bias or an unfriendly political atmosphere. Rather, the evidentiary rulings by the mayor reflected a bias so pervasive "as to render the proceedings violative of the basic fairness component of due process." 811 So.2d at 697. This court then directed the circuit judge to enter a temporary injunction in Rachel's favor pending resolution of Rachel's II.
In Rachel's II, Rachel's filed a petition in the circuit court for a writ of certiorari claiming numerous errors in the revocation of its license. The circuit court denied the petition and affirmed the city commission's decision. Rachel's then petitioned this court for certiorari review of the circuit court's decision.
Rachel's again argued it was not afforded due process at the revocation hearing. We held that Rachel's claim of lack of due process by the city commission was properly presented to the circuit court; however, that claim was beyond the scope of the due process review available in this second tier certiorari proceeding. Noting the narrow scope of review in this situation, we denied Rachel's petition for a writ of certiorari. The denial of relief meant the injunction entered in Rachel's I automatically expired.
We further noted that in Rachel's I, Rachel's had sought declaratory and injunctive relief against the city's enforcement of the license revocation premised on its due process claim. Since no party to that proceeding raised the impropriety of *1041 seeking injunctive relief by filing a separate action, rather than seeking review or a stay in the original proceedings, we did not dismiss Rachel's I on procedural grounds. Had the city raised this objection, Rachel's I would have been dismissible on procedural grounds, since Rachel's had no right to initiate an independent action to enjoin the license revocation in light of Rachel's adequate remedy at law to review the propriety of the city commission's action through certiorari in the original proceeding. Rachel's had no right to seek to enjoin the license revocation decisionRachel's only had a right to certiorari review of the city commission's decision. If it wished to suspend the effect of that decision, it had the right to seek a stay pending review in this case. Rachel's never had a right to obtain from the circuit court an injunction preventing the city commission from proceeding with the license revocation based upon events at the hearing. Rachel's II, 813 So.2d at 188, n. 1.
Similarly, Florida Water has no right to a writ of prohibition disqualifying the Board from considering its well applications. Rather it has the right to present its due process concerns to the circuit court in a certiorari proceeding to review the Board's decision. Since it has an adequate remedy, the trial court properly denied Florida Water's petition for a writ of prohibition and dismissed its complaint against the Board. See also School Board of Marion County (prohibition was not available where error below could be properly raised on appeal).
AFFIRMED.
PLEUS and PALMER, JJ., concur.
NOTES
[1] Appellees Hannah M. "Nancy" Robinson, Chair of the Board of Commissioners of Hernando County, and Board members Mary C. Aiken, Christopher A. Kingsley, Diane B. Rowden, and Betty Whitehouse.
[2] 120.665. Disqualification of agency personnel

(1) Notwithstanding the provisions of s. 112.3143, any individual serving alone or with others as an agency head may be disqualified from serving in an agency proceeding for bias, prejudice, or interest when any party to the agency proceeding shows just cause by a suggestion filed within a reasonable period of time prior to the agency proceeding. If the disqualified individual was appointed, the appointing power may appoint a substitute to serve in the matter from which the individual is disqualified. If the individual is an elected official, the Governor may appoint a substitute to serve in the matter from which the individual is disqualified....
[3] 38.10. Disqualification of judge for prejudice; application; affidavits; etc

Whenever a party to any action or proceeding makes and files an affidavit stating fear that he or she will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists and shall be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith ...
[4] Rule 2.160. Disqualification of Trial Judges

(a) Application. This rule applies only to county and circuit judges in all matters in all divisions of court.
(b) Parties. Any party, including the state, may move to disqualify the trial judge assigned to the case on grounds provided by rule, by statute, or by the Code of Judicial Conduct.
(c) Motion. A motion to disqualify shall be in writing and specifically allege the facts and reasons relied on to show the grounds for disqualification and shall be sworn to by the party by signing the motion under oath or by a separate affidavit. The attorney for the party shall also separately certify that the motion and the client's statements are made in good faith.
(d) Grounds. A motion to disqualify shall show:
(1) that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge; or
(2) that the judge before whom the case is pending, or some person related to said judge by consanguinity or affinity within the third degree, is a party thereto or is interested in the result thereof, or that said judge is related to an attorney or counselor of record in the cause by consanguinity or affinity within the third degree, or that said judge is a material witness for or against one of the parties to the cause.
(e) Time. A motion to disqualify shall be made within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling. Any motion for disqualification made during a trial must be based on facts discovered during the trial and may be stated on the record and shall also be filed in writing in compliance with subdivision (c). Such trial motions shall be ruled on immediately.
(f) DeterminationInitial Motion. The judge against whom an initial motion to disqualify under subdivision (d)(1) is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. If any motion is legally insufficient, an order denying the motion shall immediately be entered. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion.
(g) DeterminationSuccessive Motions. If a judge has been previously disqualified on motion for alleged prejudice or partiality under subdivision (d)(1), a successor judge shall not be disqualified based on a successive motion by the same party unless the successor judge rules that he or she is in fact not fair or impartial in the case. Such a successor judge may pass on the truth of the facts alleged in support of the motion.
(h) Prior Rulings. Prior factual or legal rulings by a disqualified judge may be reconsidered and vacated or amended by a successor judge based upon a motion for reconsideration, which must be filed within 20 days of the order of disqualification, unless good cause is shown for a delay in moving for reconsideration or other grounds for reconsideration exist.
(i) Judge's Initiative. Nothing in this rule limits the judge's authority to enter an order of disqualification on the judge's own initiative.