WARNER, J.
Petitioners seek second-tier certiorari review of a decision of the circuit court sitting in its appellate capacity affirming a county court’s order dismissing approximately 1500 non-resident plaintiffs from a county court suit, because none of the plaintiffs posted the $100 bond for defense costs in accordance with section 57.011, Florida Statutes. We deny the petition as we conclude that we do not have jurisdiction under these facts.
The underlying dispute involves a breach of contract action filed by more than 1500 sugar cane cutters from Jamaica seeking back wages from Osceola Farms for work performed over twenty years ago. Plaintiffs’ counsel actually filed two cases raising identical claims, one with one named plaintiff (Lennon) and the other with more than 1500 plaintiffs (Achord). The complaints allege that Osceola employed various schemes and illegal practices to avoid paying the guest workers wages due under their written contracts and required by federal law.
This is not the first time that these claims have reached our court. A general description of the facts surrounding a similar claim of foreign workers against another sugar cane harvesting company is found in a prior opinion of our court. See Okeelanta Corp. v. Bygrave, 660 So.2d 743 (Fla. 4th DCA 1995). The first claims by foreign workers against sugar companies associated with respondent were filed in 1989. During the ensuing twenty-year period, the plaintiffs have filed class actions in state and in federal court. The federal court action was dismissed. Several individual claims were prosecuted through jury trials, all being resolved against the claims of the foreign workers. See, e.g., Williams v. Atl. Sugar Ass’n, 773 So.2d 1176 (Fla. 4th DCA 2000); Gordon v. Okeelanta Corp., 784 So.2d 537 (Fla. 4th DCA 2001); Bygrave v. Sugar Cane Growers Coop., 898 So.2d 945 (Fla. 4th DCA 2005).
A class action was filed on these issues against respondent but languished for sev *701 eral years until 2005 when the trial court eventually granted respondent’s motion to decertify the class because of an inadequate class representative as well as failure to abide by several court rulings. The court, however, permitted each individual member of the class the right to file his own suit against respondent Osceola, which 1500 individual workers did by filing one action naming all of them as plaintiffs in county court.
In 2007 Osceola served a notice for the cutters to post the $100 non-resident bond required by section 57.011, Florida Statutes.[1]
Section 57.011 states:
When a nonresident plaintiff begins an action or when a plaintiff after beginning an action removes himself or herself or his or her effects from the state, he or she shall file a bond with surety to be approved by the clerk of $100, conditioned to pay all costs which may be adjudged against him or her in said action in the court in which the action is brought. On failure to file such bond within 30 days after such commencement or such removal, the defendant may, after 20 days’ notice to plaintiff (dining which the plaintiff may file such bond), move to dismiss the action or may hold the attorney bringing or prosecuting the action liable for said costs and if they are adjudged against plaintiff, an execution shall issue against said attorney.
After noncompliance, Osceola moved to dismiss the complaint for several reasons, including the failure to post the bond for each of the plaintiffs. The cane cutters responded that eighty-eight of the plaintiffs are now residents of Florida and not required to post the bond. Osceola moved to dismiss the complaint as to the remaining plaintiffs.
Fifty-nine plaintiffs in Jamaica filed declarations of their financial status with affidavits showing their indigent status and noting that the $100 bond for costs would exceed their monthly Jamaican wages in many cases. At the hearing on Osceola’s motion, petitioners argued that because they were indigent, the posting requirement would unconstitutionally constitute a deprivation of access to the courts. Based upon the arguments presented, the trial court held that the statute was constitutional and ordered the non-resident plaintiffs to deposit the required bond or face dismissal of their complaint. When the required deposits were not made, the court dismissed the non-resident plaintiffs.
The plaintiffs appealed to the circuit court, arguing that the non-resident bond statute is unconstitutional because it violates the open courts clause of the Florida Constitution.[2] They argued the statute significantly obstructs their access to the courts, and the statute fails to provide any alternative means of access for indigents.
Osceola argued that the cane cutters have had more than 18 years of litigation in the state and federal court systems; the cost bond is constitutional and it is the only way to protect against frivolous ac *702 tions by non-residents; and plaintiffs’ counsel could have posted the bond.
The circuit court affirmed the county court dismissal without opinion. Judge Cox dissented, concluding that the statute was unconstitutional. With no majority opinion, the decision cannot act as precedent for future proceedings. See Dep’t of Legal Affairs v. Dist. Court of Appeal, 5th Dist., 434 So.2d 310 (Fla.1983). Plaintiffs then filed their petition for second-tier review with this court.
Certiorari review from an appellate decision of the circuit court is limited to instances where the circuit court did not afford procedural due process or departed from the essential requirements of law. Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003) (“A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.”) (emphasis in original); Ivey v. Allstate Ins. Co., 774 So.2d 679 (Fla.2000); Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995) (in reviewing a petition for certiorari district courts of appeal should be primarily concerned with seriousness of error, not mere existence of error; a departure from the essential requirements of law is more than a legal error, it is an act that results in a gross miscarriage of justice). A departure from the essential requirements of law is synonymous with the failure to apply the correct law. See State v. Belvin, 986 So.2d 516, 525 (Fla.2008) (quoting Belvin v. State, 922 So.2d 1046, 1048 (Fla. 4th DCA 2006)). As a practical matter, the circuit court’s final ruling is generally conclusive because second-tier review is extraordinarily limited. See City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982); Seminole Entm’t, Inc. v. City of Casselberry, 813 So.2d 186 (Fla. 5th DCA 2002) (explaining that second-tier certiorari review is extremely narrow).
Here, there is no question that the circuit court afforded procedural due process. The issue raised is whether the circuit court departed from clearly established law resulting in a gross miscarriage of justice. We cannot say that the standard has been met.
Section 57.011 was first enacted in 1828, well before the enactment of even the earliest Florida constitution containing a provision for access to the courts. Art. I, § 9, Fla. Const. (1838).[3] The practical reason for such a statute is to obtain security for a suit being prosecuted by a nonresident plaintiff. See Thompson v. Grosslaub, 109 Fla. 550, 147 So. 861 (1933). In 170 years the statute appears never to have been challenged as unconstitutional on any ground. This alone provides reason to determine that the circuit court did not depart from clearly established precedent, because the law has never been construed. See e.g., Stilson v. Allstate Ins. Co., 692 So.2d 979 (Fla. 2d DCA 1997) (stating that without any controlling precedent, the district court could not conclude that the county or circuit court violated a clearly established principle of law and at most the courts simply misapplied the correct law). Moreover, Article XII, Section 6, Florida Constitution, provides that all laws in effect upon the adoption of the 1968 constitution, to the extent not inconsistent with it, shall be preserved. Section 57.011 has been applied for the past forty years without ever being found inconsis *703 tent with the provisions of the 1968 constitution.
The petitioners, however, argue that the precedent with respect to access to the courts is clear and that financial barriers cannot stand in the way of individual access under Article I, Section 21, of the Florida Constitution. Particularly, they rely on Psychiatric Associates v. Siegel, 610 So.2d 419, 424-25 (Fla.1992), receded from on other grounds in Agency for Health Care Administration v. Associated Industries of Florida, Inc., 678 So.2d 1239 (Fla.1996).
In Psychiatric Associates our supreme court held that a bond statute, adopted as part of reforms in a perceived medical malpractice crisis, unconstitutionally interfered with a plaintiffs access to the courts. The statute required a staff member or healthcare provider suing anyone participating in medical review board proceedings to post a bond sufficient to pay the defendant’s costs and attorney’s fees. The bond in question in the case amounted to $30,000. The court found that the statutes created an impermissible restriction on access to the courts, explaining:
The constitutional right of access to the courts sharply restricts the imposition of financial barriers to asserting claims or defenses in court. Although courts have upheld reasonable measures, such as filing fees, financial preconditions that constitute a substantial burden on a litigant’s right to have his or her case heard are disfavored.
Id. at 424 (emphasis supplied) (citation omitted). Thus, the amount of the bond affected the court’s decision in Psychiatric Associates.
Psychiatric Associates restated the test articulated in Kluger v. White, 281 So.2d 1 (Fla.1973), for analyzing restrictions on access to courts:
Although courts generally oppose any burden being placed on the right of a person to seek redress of injuries from the courts, the legislature may abrogate or restrict a person’s access to the courts if it provides: 1) a reasonable alternative remedy or commensurate benefit, or 2) a showing of an overpowering public necessity for the abolishment of the right, and finds that there is no alternative method of meeting such public necessity.
Psychiatric Associates, 610 So.2d at 424 (emphasis in original). In that case the court found that the Legislature had not provided a reasonable alternative remedy, nor conferred on the plaintiff a commensurate benefit. Moreover, the Legislature had not shown such an overpowering public necessity for the severe restriction on the right of access caused by the requirement of filing a substantial bond likely to prevent plaintiffs from bringing such suits.
Unlike the bond requirement in Psychiatric Associates and most other cost bond provisions, the $100 cost bond under section 57.011 is what we would term minimal. It is only a nominal payment compared to the cost of litigating a lawsuit, including the potential costs to a non-resident of bringing a cause of action in this state. Indeed, it will cost a non-resident plaintiff well in excess of $100 in almost all cases simply to travel to the state to attend any necessary proceedings involving the litigation.
In Smith v. Department of Health and Rehabilitative Services, 573 So.2d 320, 324 (Fla.1991), the court held that the access to courts provision did not require the state to provide a transcript of proceedings to an indigent person appealing an administrative proceeding. The court said:
[W]e believe that article I, section 21, is inapplicable to these cases. That clause of our constitution is typically applied to *704 guarantee every person the right of access to the courts for claims of redress of injury free of unreasonable burdens and restrictions. Smith v. Department of Ins., 507 So.2d 1080 (Fla.1987) (holding invalid statute placing cap on the recovery of noneconomic damages in personal injury cases); G.B.B. Invs., Inc. v. Hinterkopf, 343 So.2d 899 (Fla. 3d DCA 1977) (striking down requirement that mortgagor in foreclosure suit pay into court registry all mortgage payments plus delinquent interest and taxes as precondition for maintaining a counterclaim against the mortgagee). Here, there would be no denial of access to the courts by persons having claims such as petitioners because the right of appeal to a judicial tribunal is provided by section 120.68, Florida Statutes (1985). There is no suggestion that the filing fees or other costs incident to such judicial review are unreasonable as related to the general class of persons who may seek smh review.
(Emphasis supplied).
Our supreme court has held that the small cost of publication in a newspaper to secure service of process in an adoption proceeding required by statute for the commencement of child adoption proceedings was unconstitutional as applied to an indigent person who could not afford even minimal costs. See Grissom v. Dade Cnty., 293 So.2d 59 (Fla.1974). However, the court specifically noted that the adoption of children implicated a fundamental human right. Therefore, the state could not restrict such a right where a party was indigent. Here, in contrast, no fundamental right is involved.
Further, section 57.011 does not set a condition precedent to filing a cause of action. Only the defendant may invoke its provisions. A defendant may also not opt for dismissal of the claim and instead rely on the alternative provided of looking to the plaintiffs attorney to cover the cost amount. See Lady Cyana Divers, Inc. v. Carvalho, 561 So.2d 612 (Fla. 3d DCA 1990) (concluding a non-resident plaintiffs counsel was liable for costs only up to $100, the amount of the cost bond, not the defendant’s entire litigation costs). While the plaintiff claims that this is not an acceptable alternative remedy under the statute, that too has never been litigated. In this case, the attorneys for the plaintiffs have paid most court costs for their clients for twenty years.
The foregoing explains why we cannot say that the circuit court departed from the essential requirements of law or violated clearly established principles of law. Even the supreme court decisions appear to diverge when analyzing minimal fees or expenses involved in the litigation process. In a proper case brought to us on direct appeal, this issue would be ripe for our consideration. Our scope of review on second-tier certiorari is much narrower. Because there is no clearly established law to apply to this provision, we must decline jurisdiction.
LEVINE, J., concurs specially with opinion.
GROSS, C.J., dissents with opinion.

. The cost bond does not appear to have been raised as an issue in any of the prior cases. Either the plaintiffs in those cases filed the bond, their attorneys paid it, or the defendants never moved to dismiss the claims based upon the failure to file the bond. The plaintiff in the Lennon case which is still pending posted a bond; the Achord plaintiffs did not.

. Article I, section 21, entitled "Access to courts,” provides: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.”

. For an interesting historical analysis of the "open courts” clause in state constitutions, see Jonathan M. Hoffman, By the Course of the Law: The Origins of the Open Courts Clause of State Constitutions, 74 Or. L.Rev. 1279 (1995).