PER CURIAM.
Petitioner filed in this court an emergency petition for writ of prohibition to re *625 strain the enforcement of certain handwritten provisions contained in an order dismissing a temporary injunction Petitioner previously obtained against Respondent. The challenged provisions created a temporary parenting plan for the parties’ child, with rotating custody, and ordered that the child not be taken outside the state without a court order. We treated the petition as one seeking a writ of certio-rari,[1] and, on January 30, 2014, granted the petition and quashed the challenged portions of the lower court’s order. We now write to explain our reasons.

Facts

On January 6, 2014, Petitioner filed a petition in the circuit court seeking an injunction for protection against domestic violence. Therein, she asserted that her former boyfriend, who also is the father of her four-year-old son, had confronted her in a store parking lot, shouted obscenities at her, and spat in her face, all in front of the child. The petition went on to allege that the respondent had previously threatened the petitioner with guns, had previously slashed the petitioner’s tires and broken one of the lights on her vehicle, “tells [the child] he’s retarted [sic], slow,” and asserts that the respondent has attempted to remove the child from daycare without permission, in addition to having “women call and pretend to be aunts, me, and even the sitter in attempts to remove [the child] from school” without petitioner’s permission. The court entered a temporary injunction, ex parte, the same day, and scheduled a hearing for January 17, 2014. Pursuant to Petitioner’s request, the temporary injunction gave her 100 percent time-sharing with respect to the child.
A different judge — Judge Karen Giev-ers — presided at the hearing, at which both parties appeared without counsel. At the outset, Petitioner briefly gave her version of events, and stated that she did not want the child around Respondent. The following exchange ensued:
JUDGE GIEVERS: Well, you can’t use an injunction to terminate a parent’s rights of a child.
MS. HUNTER: Well, that’s not why—
JUDGE GIEVERS: That only can be done in a family law case.
MS. HUNTER: ... I’m not trying to terminate his rights, ma’am. He doesn’t even want rights. He generally has them — he doesn’t use them. Even if he wanted to use them, he doesn’t, so that’s not an issue at all....
JUDGE GIEVERS: Ma’am, he’s the father of your child.
[[Image here]]
JUDGE GIEVERS: You need to be proactively supporting a relationship, a positive relationship.
[[Image here]]
JUDGE GIEVERS: ... It is important, and I mentioned this on October 24th when I dissolved — when I denied his request for an injunction. I indicated that neither of you should make disparaging comments about the other in the presence of the child, and we talked about the importance of both of you— and the requirement under law that both of you support a positive relationship between your child and the other parent. It’s not appropriate for a parent to have a dismissive attitude toward whether the other parent of a child is in the child’s life. Children need both parents to properly develop, so let’s get that understanding between us. Is that clear?
After taking testimony pertinent to the asserted grounds for the injunction, Judge *626 Gievers asked Respondent whether he had a time-sharing agreement with Petitioner regarding the child. He testified there is no such agreement, and, although he complained about the infrequency with which he sees the child, he did not request a time-sharing plan. The judge further asked Respondent about his daily schedule, and asked him whether he “could provide care for the child, a bed for him to sleep in, help him with his meals and getting him ready for bed, et cetera ... you have a place where he would be safe with you?” to which Respondent answered affirmatively. When Petitioner asked if she could speak, Judge Gievers responded, “[o]f course,” then asked her, “Can you tell me why the child shouldn’t be with his father half the time?” Among other things, Petitioner stated, “He doesn’t have a place for [the child] to stay. He lives in a bedroom with one bed[.]”
Although the parties confirmed there was no action pending in the circuit court to establish parental responsibility and visitation, and although Respondent had not otherwise raised the issue of time-sharing, Judge Gievers concluded: “[W]e need a parenting plan. It is clear to the Court this child needs to be with his father as well as with his mother.” The judge then established a “weekly rotation, so it will be week on, week off, so that this father gets to be a father and parent the child.” She advised the parties:
The Court is going to, because of the Monday holiday coming up and to give the parties time, if they wish, to file a petition in the family law division to have a full-blown hearing on timesharing and any conditions — today is the 17th. So effective on Monday, the 27th, the temporary timesharing plan that the Court is implementing will be in place.
When Petitioner stated she had plans to move out of state, Judge Gievers responded, “You can’t take children out of state without a court order, by statute.... You need to have a custody hearing before you move, if the child is going to be going with you.” After announcing the rotating custody schedule, the judge denied Petitioner’s request for an injunction, finding insufficient evidence to support it. The judge subsequently handwrote on the pre-printed order dismissing Petitioner’s temporary injunction additional provisions as to time-sharing and prohibiting taking the child out of state.

Discussion

Section 741.30, Florida Statutes, which governs issuance of domestic violence injunctions, authorizes the issuing court to establish a temporary parenting plan under the following two circumstances:
(5)(a) If it appears to the court that an immediate and present danger of domestic violence exists, the court may grant a temporary injunction ex parte, pending a full hearing, and may grant such relief as the court deems proper, including an injunction:
[[Image here]]
3. On the same basis as provided in s. 61.13, providing the petitioner a temporary parenting plan, including a time-sharing schedule, which may award the petitioner up to 100 percent of the time sharing. The temporary parenting plan remains in effect until the order expires or an order is entered by a court of competent jurisdiction in a pending or subsequent civil action or proceeding affecting the placement of, access to, parental time with, adoption of, or parental rights and responsibilities for the minor child.
[[Image here]]
(6)(a) Upon notice and hearing, when it appears to the court that the petitioner is either the victim of domestic violence *627 as defined by s. 741.28 or has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence, the court may grant such relief as the court deems proper, including an injunction:
[[Image here]]
3. On the same basis as provided in chapter 61, providing the petitioner with 100 percent of the time-sharing in a temporary parenting plan that remains in effect until the order expires or an order is entered by a court of competent jurisdiction in a pending or subsequent civil action or proceeding affecting the placement of, access to, parental time with, adoption of, or parental rights and responsibilities for the minor child.
§ 741.30(5)(a)3, (6)(a)3, Fla. Stat. (2013); see also § 741.2902(2)(e), Fla. Stat. (2013) (providing legislative intent that, in issuing a domestic violence injunction, a court shall, inter alia, “[cjonsider supervised visitation, withholding visitation, or other arrangements for visitation that will best protect the child and petitioner from harm ”) (emphasis added). Thus, a temporary parenting plan is authorized only if the court is issuing an injunction, whether ex parte or after hearing, and is intended to protect the petitioner and the child from harm.
Moreover, should the court find it appropriate to establish such a temporary parenting plan, it must do so “on the same basis” provided in chapter 61, Florida Statutes. Section 61.13, Florida Statutes, provides that, when creating a parenting plan, including a time-sharing schedule, “[djetermination of the best interests of the child shall be made by evaluating all of the factors affecting the welfare and interests of the particular minor child and the circumstances of that family, including, but not limited to” the twenty factors listed therein. § 61.13(3), Fla. Stat. (2013).
Here, Judge Gievers denied Petitioner’s request for an injunction, finding the evidence insufficient to support it, and dismissed the previously-issued temporary injunction, but set up a parenting plan that included weekly rotating time-sharing with the child. We recognize the judge’s apparent concern that there may have been — and, in the absence of an injunction, may yet be — roadblocks to a desirable parent-child relationship between Respondent and his son. However, while section 741.30 authorizes a temporary parenting plan upon the issuance of a domestic violence injunction, it provides no authorization for a parenting plan upon the dissolution or denial of such an injunction. Therefore, having denied the injunction, Judge Gievers was not authorized under section 741.30 to establish a temporary parenting plan. Taking such action without statutory authority was a departure from the essential requirements of law. See Coleman v. Coleman, 906 So.2d 1267, 1268 (Fla. 3d DCA 2005) (holding trial court lacked jurisdiction to enter subsequent order granting husband exclusive use and possession of marital residence after denying husband’s petition for injunction, because section 741.30 only permits such relief when requirements for issuing an injunction are satisfied); Taylor v. Taylor, 831 So.2d 240, 241 (Fla. 2d DCA 2002) (quashing, for lack of authority, portion of order dismissing mother’s temporary injunction in which trial court also enjoined father from contact with mother and children and awarded mother exclusive use of marital home).
Moreover, Judge Gievers violated Petitioner’s right to due process by granting relief not requested by Respondent, and by sua sponte raising and considering the issue without providing adequate notice. At no time did Respondent, even while being questioned by the court, *628 request custody of the child, shared or otherwise. Although Petitioner’s original petition for injunction “request[ed] that the Court prohibit time-sharing by Respondent” with the child, and she so stated at the hearing, it was part of Petitioner’s overall request for injunctive relief and was based on her asserted fear of imminent harm to the child. She had no notice that, in the event the court denied her petition, Respondent could receive court-ordered shared custody of the child. An order adjudicating an issue not presented by the parties or the pleadings denies due process, and therefore, departs from the essential requirements of law. See Kerrigan, Estess, Rankin & McLeod v. State, 711 So.2d 1246, 1248 (Fla. 4th DCA 1998) (citing Cortina v. Cortina, 98 So.2d 334 (Fla.1957)); see also Blackwood v. Anderson, 664 So.2d 37, 38 (Fla. 5th DCA 1995) (quashing order awarding father custody of children after mother failed to appear at hearing on her injunction petition, because father did not properly plead custody and mother was not sufficiently noticed on custody issue).
Finally, even if Judge Gievers had properly considered a temporary parenting plan upon dissolving Petitioner’s injunction, nothing in the hearing transcript shows she considered any of the criteria set out in section 61.13, Florida Statutes, as required by section 741.30. To be sure, no consideration was given to whether a “week on, week off’ time-sharing arrangement would be appropriate for this four-year-old child who, until now, has lived solely -with his mother. See § 61.13(3)(d), Fla. Stat. (2013) (including as factors for determining the child’s best interests, “[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity,” and “[t]he developmental stages and needs of the child and the demonstrated capacity and disposition of each parent to meet the child’s developmental needs”). Her reasoning simply was “this child needs to be with his father as well as his mother.” Such failure to apply section 61.13 was a departure from the essential requirements of law. See Achord v. Osceola Farms Co., 52 So.3d 699, 702 (Fla. 4th DCA 2010) (“A departure from the essential requirements of law is synonymous with the failure to apply the correct law.”) (citing State v. Belvin, 986 So.2d 516, 525 (Fla.2008)).
For the foregoing reasons, the PETITION FOR WRIT OF CERTIORARI is GRANTED.
THOMAS, MARSTILLER, and MAKAR, JJ., concur.

. See Fla. R. App. P. 9.040(c).